UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANGELA MCALISTER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 08-2082 (RMC) |
| JOHN E. POTTER, Postmaster General, United States Postal Service; *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Angela McAlister alleges that she was fired from her job at the U.S. Postal Service, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, and the United States Constitution, after she yelled at her supervisor and shoved him backwards during an altercation over a leave slip. Because Ms. McAlister's claims under Title VII were not timely filed, they will be dismissed. Further, Ms. McAlister fails to state a claim for any Constitutional violation. As the Second Amended Complaint fails to state a claim on which relief can be granted, defendants' motion to dismiss will be granted.

### I. FACTS

Angela McAlister began employment at the Postal Service in 1980. In 2005, she was a mail processing clerk at the Curseen-Morris facility on Brentwood Road in Washington, D.C. On September 1, 2005, Ms. McAlister was working a shift that ran from 5:00 am to 1:30 pm. Compl.

¶ 5.[1]  She became ill and asked to go to the medical unit but then learned that the medical unit was closed.  Ms. McAlister submitted a leave slip to her supervisor, Defendant Robert Fauntleroy, informing him that the medical unit was closed.  *Id*.  Mr. Fauntleroy said the medical unit was open, took the leave slip from Ms. McAlister, and started to scratch out the reason given by Ms. McAlister for requesting leave.  According to Ms. McAlister:

> Ms. McAlister took the leave slip back from Fauntleroy.  Fauntleroy responded by grabbing the leave slip out of Ms. McAlister's hands and turning his back to her with the leave slip in his hands.  Ms. McAlister attempted to retrieve the leave slip from Fauntleroy while yelling at Fauntleroy that he could not snatch anything out of her hand.  Ms. McAlister made two attempts to retrieve her leave slip.  Fauntleroy later crushed the leave slip into a ball in his hands.

Compl. ¶ 5.  The defendants' version of the events includes a few additional details:

> Mr. Fauntleroy stated when he informed her the leave slip was not accurate she grabbed the leave slip out of Mr. Fauntleroy's hand.  Mr. Fauntleroy then grabbed the leave slip back from Ms. McAlister.  At this time, Ms. McAlister then pushed Mr. Fauntleroy in his upper-body and proceeded to hit him multiple times in the shoulder with enough force knocking him backward.  Ms. McAlister continued pushing and hitting Mr. Fauntleroy and swung at him in a slapping motion . . . .  While Ms. McAlister was hitting and pushing Mr. Fauntleroy she was yelling at him that he cannot take anything out of her hand.  Ms. McAlister's husband, Herman McAlister, who is also a postal employee, was present and was able to restrain his wife from continuing the assault on Mr. Fauntleroy.  Ms. McAlister was escorted out of the building by her husband before the postal police arrived on the scene.

Defs.' Mem. in Support of Mot. to Dismiss, or in the Alternative, for Summ. J. [Dkt. # 24] ("Defs.' Mem."), Ex. A (9/14/2005 Investigative Memorandum) at 1.  A witness concurred with this description of events.  *Id*. at 1–2.  Mr. McAlister "admitted he saw his wife put her hand on Mr.

---

[1]  All references to the Complaint ("Compl.") are to the Second Amended Complaint filed on August 25, 2009.  *See* Dkt. # 21.

Fauntelroy's back." *Id*. at 3. Ms. McAlister does not dispute the defendants' version of events, but she blames Mr. Fauntleroy for starting the ruckus, because he allegedly snatched the leave slip from her hands.

Ms. McAlister was placed on emergency off-duty status without pay on September 1, 2005.[2] Compl. ¶ 5. The Postal Service scheduled Ms. McAlister for a pre-disciplinary interview for 12:00 am (midnight) on September 26, 2005. *Id*.; Defs.' Mem., Ex. F (Notice of Pre-Disciplinary Interview). Ms. McAlister called at 11:00 pm to inquire about the interview, but no one answered the phone. Compl. ¶ 5. Ms. McAlister did not appear for the interview. Ms. McAlister was issued a notice of removal on October 17, 2005. *Id*.; Defs.' Mem., Ex. G (Notice of Removal). No action was taken against Mr. Fauntleroy for grabbing the leave slip from Ms. McAlister. Compl. ¶ 5.

Ms. McAlister further alleges that "[a]s [a] result of Ms. McAlister's prior [Equal Employment Opportunity ("EEO")] complaints against the USPS, Defendants Potter and Fauntleroy pursued criminal charges against Ms. McAlister." Compl. ¶ 7.[3] This allegedly entailed sending two Postal Inspectors to her home, who screamed at her through her front door, broke her storm door, and left threatening messages on her answering service. *Id*. This caused Ms. McAlister to call the Prince George's County Police Department. Later, when Ms. McAlister went to the District of Columbia Metropolitan Police Department "to find out about her complaint," the Postal Inspectors "arrested, handcuffed and dropped [her] on the sidewalk." *Id*. Ms. McAlister was later taken to a

---

[2] Ms. McAlister alleges that her placement on non-pay, non-duty status on September 1, 2005, violated the collective bargaining agreement between the Postal Service and the employee union. Compl. ¶ 6. This allegation is subject to the contract's grievance/arbitration provisions.

[3] "Prior to September 2005, Ms. McAlister filed EEOC complaints against the USPS." Compl. ¶ 4. Those complaints were filed on June 26, 1998, and June 19, 2001. *See* Defs.' Mem., Ex. K ("EEO Investigation Report").

hospital and handcuffed to a wheelchair. *Id*. She was charged with assault on Mr. Fauntleroy and spent twenty-one hours in a jail in the District of Columbia. *Id.*

Ms. McAlister timely filed a formal complaint of discrimination based on sex, age, disability and retaliation with the EEO office at the Postal Service.[4] In the EEO process, Ms. McAlister sought to have the emergency off-duty, non-pay status and the removal notice rescinded and removed from her personnel records; to receive make-whole relief for all monies and benefits; and to receive reimbursement for medical expenses and repairs to her home. EEO Investigation Report. Following an investigation, Ms. McAlister requested a hearing before an EEOC Administrative Judge. Defs.' Mem., Ex. J ("Final Agency Decision") at 1. The parties submitted briefs and on September 12, 2006, the Administrative Judge "issued a decision without a hearing, finding that the agency did not discriminate" against Ms. McAlister. *Id*. The EEO office at the Postal Service reviewed the decision and issued its Notice of Final Action on September 25, 2006, implementing the Administrative Judge's decision. The Postal Service's final decision was appealed for *de novo* review by the Equal Employment Opportunity Commission ("EEOC"), which issued its final determination on August 28, 2008, sustaining the agency's finding of no discrimination. *Id*. For present purposes, it is notable that the EEOC decision also advised Ms. McAlister that, "[y]ou have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision." *Id*. at 2 (emphasis in original).

On January 4, 2007, Ms. McAlister filed a complaint with the United States District Court for the District of Columbia similar to the instant Complaint. Ms. McAlister's initial case was dismissed without prejudice on August 7, 2008, for failure to exhaust administrative remedies

---

[4] Only the sex discrimination charge is pursued in the Complaint filed here.

because she filed it before the expiration of 180 days after her October 23, 2006 appeal of the Postal Service's final agency decision to the Office of Federal Programs at the EEOC. *See McAlister v. Potter*, 570 F. Supp. 2d 24 (D.D.C. 2008). Ms. McAlister filed the immediate Complaint on December 3, 2008, ninety-seven (97) days after the EEOC issued its August 28, 2008 decision on her appeal.

In the instant matter, Ms. McAlister claims violations of Title VII and her constitutional rights. Count I of the Complaint alleges that the Postal Service discriminated against Ms. McAlister based on her gender and retaliated against her because of her prior protected activity. Compl. ¶ 13. Ms. McAlister claims she was discriminated against on the basis of her sex when she was issued a notice of removal on October 17, 2005, and subsequently terminated because, in a prior incident where a male supervisor allegedly struck a male letter carrier in the chest, both were only sent home for one day with pay. *Id.* ¶ 8. She also points to the fact that no action was taken against Mr. Fauntleroy for snatching the leave slip from her, whereas she was terminated for her behavior. *Id.* ¶ 5. Count II alleges that the defendants violated her Fourth Amendment rights to be free from unreasonable searches and seizures when the Postal Inspectors visited her home, yelled at her through the door, broke her storm door, left threatening messages on her answering service, and then later arrested her and dropped her on the sidewalk. *Id.* ¶ 16.[5]

Count III alleges a violation of the due process clause of the Fifth Amendment because Ms. McAlister was removed from her job in a summary fashion "without procedural and

---

[5] The heading to Count II is labeled "Violation of Fourth and Fourteenth Amendment Rights" but makes no substantive allegation of any violation of the Fourteenth Amendment. In any event, the Fourteenth Amendment pertains only to the States and not to the Federal Government, *see, e.g., Wight v. Davidson*, 181 U.S. 371, 384 (1901), so it does not apply to any defendant here. Thus, any claims based on the Fourteenth Amendment are dismissed.

substantive process due her." *Id*. ¶ 20. The conduct of the Postal Inspectors is also alleged under Count III to violate Ms. McAlister's due process rights. Count IV alleges that Messrs. Potter and Fauntleroy "deprived McAlister of due process and a name-clearing hearing to which she was entitled under the Due Process Clause" when her pre-disciplinary hearing was scheduled for midnight and she was terminated without a hearing. *Id*. ¶ 23. Count V advances a claim under 42 U.S.C. § 1983 against Messrs. Potter and Fauntleroy for alleged violations of Ms. McAlister's constitutional rights, "including her Fourth Amendment right to be free from unreasonable searches and seizures, Fifth Amendment right to due process, and Eighth Amendment right to be free from cruel and unusual punishment."[6] *Id*. ¶ 27.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic

---

[6] The Eighth Amendment right to be free from cruel and unusual punishment is not applicable to Ms. McAlister, as it only applies to those incarcerated after conviction for a crime. *Ingraham v. Wright*, 430 U.S. 651, 664 (1977); *Dockery v. Reed*, 1998 U.S. App. LEXIS 20677, Civ. No. 97-7172, *2 (D.C. Cir. 1998) ("Eighth Amendment claims are limited to the terms and conditions of criminal punishments, and Dockery's claims involve events which allegedly occurred before he was incarcerated."). Accordingly, the Eighth Amendment claim is dismissed.

recitation of the elements of a cause of action will not do." *Id*. The facts alleged "must be enough to raise a right to relief above the speculative level." *Id*. Therefore, Rule 8(a) requires an actual showing and not just a blanket assertion of a right to relief. *Id*. at 555 n.3.

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. When a plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has facial plausibility. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.

### III. ANALYSIS

Count I of the Complaint alleges discrimination based on sex and retaliation based

upon prior protected activity. Counts II through V allege a deprivation of various constitutional rights. They will be addressed in turn.

### A. Title VII Allegations

Title VII prohibits an employer from discriminating on the basis of race, color, religion, sex, or national origin in hiring decisions, in compensation, terms, and conditions of employment, and in classifying employees in a way that would adversely affect their status as employees. *See generally* 42 U.S.C. § 2000e. Section 717 of the Civil Rights Act extended Title VII protections to federal employees and mandated that federal agencies enact an administrative process for the investigation and processing of discrimination claims by federal employees. *See* 42 U.S.C. § 2000e-16. A federal employee must first proceed before the agency accused of discrimination before the employee may institute a civil action in federal court. 42 U.S.C. § 2000e-16(c); *see also Bayer v. U.S. Dep't of Treasury*, 956 F.2d 330, 332 (D.C. Cir. 1992). It is mandatory that an employee go through this process in order to exhaust her administrative remedies. *See Brown v. GSA*, 425 U.S. 820, 832-33 (1976); *Bayer*, 956 F.2d at 332.

Following the exhaustion of administrative remedies, a federal employee may bring a timely civil action by filing suit with a federal district court within 90 days of final administrative action. *See Price v. Greenspan*, 374 F. Supp. 2d 177, 184 (D.D.C. 2005), *aff'd*, *Price v. Bernanke*, 470 F.3d 384 (D.C. Cir. 2006); *accord* 42 U.S.C. § 2000e-16(c) (federal employees must file a civil action within ninety days after "receipt of notice of final action"). Courts apply the ninety-day time limit strictly and will dismiss a suit for missing the deadline by even one day. *See, e.g., Woodruff v. Peters*, 375 U.S. App. D.C. 429, 433 (D.C. Cir. 2007) (citing *Wiley v. Johnson*, 436 F. Supp. 2d 91, 96 (D.D.C. 2006)); *Harris v. U.S. Dep't of Veterans Affairs*, 126 F.3d 339 (D.C. Cir. 1997)

(giving effect to a complaint filed one day late only because the defendant failed to raise timeliness as an affirmative defense); *Smith v. Dalton*, 971 F. Supp. 1, 2–3 (D.D.C. 1997) (suit filed ninety-one days after final agency action is barred).

However, the ninety-day time period is non-jurisdictional — it functions as a statute of limitations and is subject to waiver, estoppel, and equitable tolling. *Mondy v. Sec. of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988).[7] Tolling applies only in "extraordinary and carefully circumscribed instances." *Id*. Courts may allow tolling where:

> a claimant has received inadequate notice, . . . where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, . . . where the court has led the plaintiff to believe that she had done everything required of her, . . . [or] where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction.

*Id*. (quoting *Baldwin Cnty Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984)). Courts are not forgiving where late filings are simply due to a plaintiff's failure to exercise due diligence. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). In other words, to warrant equitable tolling, a plaintiff must have exercised due diligence and her excuse for the delayed filing must be "more than a garden variety claim of excusable neglect." *Battle v. Rubin*, 121 F. Supp. 2d 4, 8 (D.D.C. 2000). The burden of pleading and proving any excuse for failure to meet the ninety-day filing limit falls wholly upon the plaintiff. *Saltz v. Lehman*, 672 F.2d 207, 209 (D.C. Cir. 1982).

The fatal flaw in Ms. McAlister's Title VII claims of sex discrimination and

---

[7] *Mondy* interpreted the thirty-day time limit for filing under the prior version of Title VII. The Civil Rights Act of 1991 amended the deadline to file suit to ninety days, effective November 21, 1991. *See Wilson v. Pena*, 79 F.3d 154, 162 (D.C. Cir. 1996)

retaliation are that they are untimely brought to court.[8] Title VII sets forth time limits for the filing of a civil action in federal courts. It provides that "[w]ithin 90 days of receipt of notice of final action taken by a department, agency . . . or by the [EEOC] . . . an employee or applicant for employment, if aggrieved by the final disposition of his complaint . . . may file a civil action." 42 U.S.C. § 2000e-16(c). Courts generally presume that "plaintiffs receive decisions either three or five days after their issuance." *Okereh v. Winter*, 600 F. Supp. 2d 139, 141 (D.D.C. 2009) (citing Fed. R. Civ. P. 6(e) which provides for three days); *Baldwin Cnty Welcome Ctr.*, 466 U.S. at 148 (citing Fed. R. Civ. P. 6(e) as the basis for a three day presumption in the Title VII context); *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 n.3 (D.C. Cir. 1998) ("Title VII plaintiffs need not include the date of receipt of a right-to-sue letter in their complaints. In the event that a date is not pleaded, the Supreme Court has applied the '3-day' rule of Fed. R. Civ. P. 6(e) to presume that the letter is received three days after it is mailed."); *but see Anderson v. Local 201 Reinforcing Rodmen*, 886 F. Supp. 94, 97 (D.D.C. 1995) (noting that most courts apply a presumption of receipt of a right-to-sue letter three or five days after the decision was issued). Courts may also presume that the decision was mailed on the same day it was issued. *Anderson*, 886 F. Supp. at 97. A plaintiff can rebut this presumption by "'sworn testimony or other admissible evidence' indicating the notice was received later." *Okereh*, 600 F. Supp. 2d at 142 (quoting *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 526 (2d Cir. 1996) and citing *Williams v. First Gov't Mortg. & Investors Corp.*, 225 F.3d 738,

---

[8] A further difficulty is that Mr. Fauntleroy is not a proper Title VII defendant. Only an employer is liable for a violation under Title VII. *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995). By statute, the only proper federal defendant is the "head" of the "agency" involved. 42 U.S.C. § 2000e-16(c). Therefore, the correct defendant in this claim is the United States Postmaster General, the head of the Postal Service, which is currently John E. Potter. Mr. Fauntleroy, identified as both Robert Fauntleroy and Bobby L. Fauntleroy in the pleadings, will be dismissed as a defendant.

751 (D.C. Cir. 2000)).

Ms. McAlister was advised by the EEOC that she had 90 days from the date she received its August 28, 2008 decision to file suit. Even presuming a generous five days for mail delivery and receipt, Ms. McAlister did not file this lawsuit until the ninety-second day. Ms. McAlister argues that the defendants have not presented "any evidence on when and if Plaintiff received the OFO decision." Pl.'s Opp'n to Defs.' Mot. to Dismiss, or in the Alternative, for Summ. J. [Dkt. # 26] ("Opp'n") at 6. She adds that "[i]t is far from clear that Defendants will be able to establish that the Title VII claim is untimely."[9] *Id*. This argument misperceives the operation of a legal presumption. The Court is free to presume that Ms. McAlister received the OFO decision three or five days after its issue. She did not plead a different date of receipt nor did she rebut this presumption through a sworn statement or evidence demonstrating a date of receipt beyond five days from the issuance of the decision. The defendants did, however, properly raise the affirmative defense of timeliness. *See* Defs.' Mem. at 14–15. As a result, Ms. McAlister's claims are time-barred unless waiver, estoppel, or equitable tolling apply, which are recognized only in narrowly tailored circumstances. *See Irwin*, 498 U.S. at 95–96; *Mondy*, 845 F.2d at 1057. Ms. McAlister does not argue that equitable considerations should excuse her tardiness and, in fact, offers no explanation at all. Therefore, she fails to satisfy the burden, which is hers alone, of demonstrating that equity

---

[9] Ms. McAlister also points to the EEOC's clear typographical error stating that the Postal Service's final agency decision was rendered on "September 25, 2008" in a vain attempt to cast doubt on the critical dates at issue. *See* Opp'n at 5–6; Final Agency Decision at 1. It is clear that if the EEOC were to review an appeal of the Postal Service's final agency decision, the Postal Service's decision would have to precede the EEOC's August 28, 2008 determination on the appeal. More importantly, Ms. McAlister attached the Postal Service's final agency decision to her initial complaint filed with this Court in 2007, which unequivocally identified the final agency decision date as "September 25, 2006." *See McAlister v. Potter, et al.*, Civ. No. 07-16, Compl. Attach. 1 (Final Agency Decision) [Dkt. #1] (D.D.C. 2007).

demands that her late filing be forgiven. *See Saltz*, 672 F.2d at 209.

Instead, Ms. McAlister argues that the dismissal without prejudice of her initial complaint when the administrative process was incomplete "permitted the plaintiff to file a new complaint after the duration of 180 days." Opp'n at 6 (citing *Martini v. Fed. Nat'l Mortg. Ass'n*, 178 F.3d 1336 (D.C. Cir. 1999)). The argument confuses two different aspects of the EEO charge process. Exhaustion of administrative remedies is necessary before an EEO complainant can bring her case to federal court. *Price*, 374 F. Supp. 2d at 184. The administrative remedy in question in *Martini* is the rule giving the EEOC a minimum of 180 days to consider, investigate, and decide the merits of an EEO charge. As it often takes longer than 180 days to make a determination on an appeal, at the end of 180 days, an employee can terminate the EEOC appeals process and immediately file a claim with the federal court. *Wilson v. Pena*, 79 F.3d 154, 166 (D.C. Cir. 1996); *see also* 29 CFR § 1614.407(d) (noting that a complainant can file suit in federal court after 180 days from the date of filing an appeal with the EEOC if there has been no final decision by the EEOC); 42 U.S.C.S. § 2000e-16(c). However, a lawsuit filed within that 180 days will be dismissed as premature, which is what happened in *Martini*; Mr. Martini was required to wait for the expiration of the full 180 days (or the issuance of an EEOC decision) before refiling his suit. *Martini*, 178 F.3d at 1348. Here, however, Ms. McAlister followed the entirety of the administrative process, including an appeal of an adverse final agency action to the EEOC. Unlike *Martini*, where the complainant brought suit before the EEOC had rendered a final decision, the EEOC issued a final determination in Ms. McAlister's case. Following this final determination by the EEOC dismissing her charge, Ms. McAlister had ninety days to file suit with the district court, and the EEOC explicitly advised her of this deadline.

The EEOC decision issued on August 28, 2008. This lawsuit was filed 97 days later on December 1, 2008. Ms. McAlister offers nothing to rebut the presumption that the EEOC decision was received in a timely manner or that equitable considerations would toll the ninety day period from receipt of the decision for filing suit. Her Title VII allegations in Count I must be dismissed.[10]

**B. Constitutional Allegations**

**1. 42 U.S.C. § 1983 Claims**

Federal law protects people in the United States from being deprived of constitutional rights by a person acting under color of State law. Specifically, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id*. Critical to any claim under § 1983 is that the defendant acted under "color" or authority of a state, territory, or D.C. law. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487

---

[10] The retaliation claims suffer another legal infirmity. Ms. McAlister's prior protected activity, admittedly occurring "before 2005," Compl. ¶ 4, actually occurred on June 26, 1998, and June 19, 2001. *See* EEO Investigation Report. These prior protected activities occurred much too long before Ms. McAlister's suspension and discharge in 2005 to support an inference of causation. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (per curiam) (finding that temporal proximity must be "very close" and that an adverse action taken almost two years after protected activity, by itself, wholly fails to demonstrate causality). Additionally, Ms. McAlister failed to exhaust her administrative remedies with regard to her claim that the defendants pursued criminal charges against her because of her prior EEO activity.

U.S. 42, 49 (1988) (internal quotations omitted). Defendants move to dismiss the § 1983 allegations against the Postal Inspectors, arguing that the Postal Inspectors were acting under federal, not D.C., law, and thus are not subject to a § 1983 suit. Ms. McAlister responds that *Williams v. United States*, 396 F.3d 412 (D.C. Cir. 2005), supports her claim.

Ms. McAlister alleges that two U.S. Postal Inspectors came to her home, screamed through her front door, broke her storm door and left threatening messages on her answering machined, which forced her to call the Prince George's County Police Department. Compl. ¶ 7. She contends that she later drove to the Metropolitan Police Department in D.C., where she was arrested, handcuffed and dropped on the sidewalk by the Postal Inspectors; that MPD officers later dropped her on some steps; that she was handcuffed to a wheelchair when taken to the hospital; and that she spent 21 hours in D.C. jail after she was charged with assault on Mr. Fauntleroy. *Id*. From these allegations, she musters the argument that, "although the USPS Postal Inspectors were federal officers, this was a federal [sic] action because Ms. McAlister has sufficiently alleged that the District of Columbia had authority over the Postal Inspectors and provided significant encouragement and otherwise participated in the arrest and mistreatment of Ms. McAlister." Opp'n. at 8.

Nowhere in the Complaint is there a single allegation that the District of Columbia had authority over the Postal Inspectors and nowhere in the factual recitation of the events on which this claim rests are there facts that would lead to that conclusion. *Williams* is exactly on point. *Williams* reasoned that a federal Government Printing Office special police officer's arrest of Mr. Williams could not be called action by the District of Columbia because the officer was a federal official and D.C. had no authority over him and did not "exercise . . . coercive power" through him

or "provide[] significant encouragement" or "otherwise participate[] in [the officer's] arrest and alleged mistreatment of Williams." *Williams*, 396 F.3d at 415.

The confluence of federal officials and local police officers in this fact pattern is a necessity of the Federal City. Federal officials enforce federal law. If enforcement of a federal law requires the incarceration of a suspect, federal officials must, perforce, turn their suspect over to the MPD. Thus, the fact that Ms. McAlister was arrested by Postal Inspectors and allegedly dropped by them, and later handed over to MDP officers who also allegedly dropped her, as stated in the Complaint, provides no factual basis for the argument that the MPD exercised coercive power over the Postal Inspectors or participated in the Postal Inspectors' arrest and alleged mistreatment of Ms. McAlister.[11] The claims alleging a violation of § 1983 will be dismissed because Ms. McAlister has simply not pleaded sufficient factual content to allow the Court to draw any inference that the Postal Inspectors were acting under color of D.C. law. *See Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 570; *Kowal v. MCI Comm. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (noting that a court need not accept a plaintiff's inferences, conclusory allegations, or legal conclusions that are unsupported by the facts pleaded in the complaint).

### 2. Other Constitutional Claims

**(a) Claims for Damages**

Ms. McAlister seeks money damages for the alleged constitutional violations. Compl. at 12 (seeking one million dollars for violations of the Fourth, Fifth and Eighth Amendments). If these claims were intended to proceed against the U.S. Government or the

---

[11] Ms. McAlister makes no claims against the MPD officers. *See* Compl. (Count V) ¶¶ 26–30.

defendants in their official capacities, they are barred by sovereign immunity. It is "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *see also Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994) (noting that absent a specific waiver, the United States government is protected from suit by the doctrine of sovereign immunity). Sovereign immunity bars suits for money damages against the government itself and against public officials sued in their official capacities. *Konarski v. Brown*, 2004 U.S. App. LEXIS 11277, Civ. No. 03-5340, *2 (D.C. Cir. 2004); *Perkins v. Ashcroft*, 275 Fed. Appx. 17, 17 (D.C. Cir. 2008) ("To the extent appellant was attempting to sue the former Attorney General in his official capacity, the action is barred by sovereign immunity."); *Clark v. Library of Congress*, 750 F.2d 89, 102–03 (D.C. Cir. 1984). If Ms. McAlister intended to assert a *Bivens* claim against defendants in any individual capacity, she has not alleged individual liability or served the defendants individually, and the time to do so has run. *See* Fed. R. Civ. P. 4(m); *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997) (defendants in *Bivens* actions must be served in an individual capacity).

### (b) Claims for Injunctive & Declaratory Relief

To the extent that Ms. McAlister also seeks declaratory and equitable relief on her constitutional claims, they too are barred. Ms. McAlister's constitutional claims based on alleged sex discrimination are preempted by the comprehensive and detailed administrative process created by Congress for dealing with federal employment complaints. Title VII adequately responds to Ms. McAlister's requests for relief as it allows for compensatory damages, backpay, injunctions, and other equitable relief, as appropriate, against the United States. *See, e.g., United States v. Burke*, 504 U.S. 229, 238 (1992); *see also* 42 U.S.C. § 1981a(b)(1) (amending Title VII to provide for

compensatory damages, but precluding punitive damages against government agencies). Therefore, Title VII is the exclusive remedy for any challenge to the Postal Service's actions based on alleged sex discrimination. *Brown*, 425 U.S. at 835 (finding Title VII the exclusive remedy for discrimination alleged by federal employees on account of race or sex); *Richardson v. Wiley*, 569 F.2d 140, 141 (D.C. Cir. 1977) (finding a federal employee's claim under the Fifth Amendment precluded by Title VII); *Ethnic Emps. of Library of Congress v. Boorstin*, 751 F.2d 1405, 1415 (D.C. Cir. 1985) ("[F]ederal employees may not bring suit under the Constitution for employment discrimination that is actionable under Title VII."). Furthermore, as Ms. McAlister exhausted the available grievance procedure under her collective bargaining agreement and successfully had the notice of removal and the emergency placement reduced to a long term suspension, with the possibility of reinstatement under a Last Chance Agreement, Counts III and IV alleging violations of the Fifth Amendment Due Process Clause are dismissed as moot.[12]

---

[12] Ms. McAlister filed a grievance under the collective bargaining agreement between the Postal Service and the American Postal Workers Union, in which those parties reached a pre-arbitration settlement agreement on August 7, 2006. That Settlement Agreement stipulated:

> As a result of our discussion on this date, it is mutually agreed that the above cited grievance is resolved in accordance with the following: The Notice of Removal and Emergency Placement will be reduced to a long term suspension. The local parties will negotiate a Last Chance Agreement. No back pay.
>
> By virtue of this full and final settlement agreement, this document shall also serve as the union's official notification to management that it is withdrawing this case from arbitration.

Defs.' Mem., Ex. L (Pre-Arbitration Settlement Agreement) at 1. However, before the Last Chance Agreement was fully negotiated, Ms. McAlister took disability retirement, effective April 17, 2007. *Id*. at 2. Thus, even if Ms. McAlister had a cognizable property interest in her employment with the Postal Service justifying due process protections, the post-deprivation procedures provided by the Postal Service and her collective bargaining agreement were more

Ms. McAlister's claims that Postal Inspectors came to her home, threatened her, left threatening messages on her answering service, and broke her storm door do not invoke the Fourth Amendment, as she alleges, as these actions were neither a search nor a seizure. Instead, these allegations properly sound in tort. The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, provides Ms. McAlister's only remedy here. The FTCA extends a limited waiver of the United States's sovereign immunity, and provides a remedy against the Federal Government for some torts committed by federal employees in the scope of their employment. 28 U.S.C. § 1346(b); *Sloan v. Dep't of Housing and Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001). The FTCA bars claimants from bringing suit, however, until they have exhausted their administrative remedies, which includes the requirement that claimants first bring their claims to the agency, and that the claims have been denied by that agency. *McNeil v. United States*, 508 U.S. 106, 111, 113 (1993); *see also* 28 U.S.C. § 2675(a) ("[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency."). The exhaustion requirement is jurisdictional. *GAF Corp. v. United States*, 818 F.2d 901, 904 (D.C. Cir. 1987). The Complaint neither contains allegations pursuant to the FTCA nor pleads that Ms. McAlister has exhausted her administrative remedies as to these claims.

Lastly, Ms. McAlister's claims that the Postal Inspectors arrested her and dropped her on the sidewalk might invoke the Fourth Amendment as her arrest would constitute a seizure. She alleges that she went voluntarily to an MPD station and was arrested there by U.S. Postal Service Inspectors. Compl. ¶ 7. Ms. McAlister contends that the defendants are liable because of "the

---

than enough to satisfy the requirements of due process. *See, e.g., Sloan v. HUD*, 231 F.3d 10, 19 (D.C. Cir. 2000).

treatment of Ms. McAlister by agency managers, in causing her arrest and incarceration and subjecting Ms. McAlister to an unconstitutional search and seizure." Compl. ¶ 17. Yelling outside Ms. McAlister's house and destroying her screen door did not constitute a search. Ms. McAlister does not allege that her arrest was without probable cause as she was arrested for an alleged assault; therefore, the arrest itself was not an unconstitutional seizure.

Even if Ms. McAlister intended to claim that the Postal Inspectors employed excessive force in effectuating her arrest by allegedly dropping her, which is not at all clear, the Complaint fails to plead sufficient facts to support such a claim. A claim of excessive force is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, which tracks the constitutional text by asking 'whether the force applied was reasonable.'" *Johnson v. District of Columbia*, 528 F.3d 969, 973 (D.C. Cir. 2008) (citations omitted). The only possible allegation of force is that the Postal Inspectors "dropped" Ms. McAlister — which can be read as inconsistent with the application of force in that the act of dropping could be a passive or inadvertent act.[13] Ms. McAlister has not pleaded sufficient factual content for the Court to conclude that this claim has facial plausibility. *See Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 570; *Kowal v. MCI Comm. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Ms. McAlister's Fourth Amendment claims will be dismissed without prejudice.

---

[13] The Supreme Court elaborated that "[w]ith respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396–97 (1989) (internal citations and quotations omitted).

## IV. CONCLUSION

The defendants' motion to dismiss for failure to state a claim on which relief can be granted [Dkt. # 24] shall be granted. The Title VII allegations are untimely and the constitutional claims are infirm as a matter of law. A memorializing Order accompanies this Memorandum Opinion.


Date: August 23, 2010                                   /s/
                                              ROSEMARY M. COLLYER
                                              United States District Judge